IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Crim. No. 1:13-cr-082** |
| v. | : | |
| **TREVORN PARKINS** | : | **Judge Sylvia H. Rambo** |

## M E M O R A N D U M

Before the court is Defendant Trevorn Parkins' ("Parkins") motion to amend or vacate a sentence pursuant to 28 U.S.C. § 2255. (Doc. 62.) A hearing on the petition was held on February 22, 2017, and on March 10, 2017, Parkins filed a memorandum entitled "Closing Argument in Support of Defendant's Petition under 28 U.S.C. § 2255." (Doc. 104.) The government responded by filing a brief in opposition on April 20, 2017. (Doc. 107.) For the following reasons, the motion will be denied.

### I. Background

On April 12, 2013, Parkins rented a car and drove from Buffalo, New York to the home of 12-year-old D.T. in Orrstown, Pennsylvania. (PSR at ¶ 12.) Parkins and D.T. had been communicating through a social messaging application and text messaging for approximately two months prior to Parkins' arrival at D.T.'s home. *Id.* at ¶ 14. Parkins and D.T. then traveled to Parkins' apartment in

Buffalo, New York. *Id.* The two had sexual intercourse twice – once shortly after arriving at the apartment and once the next morning. *Id.* at ¶ 12.

In a two-count Indictment filed on May 1, 2013, Parkins was charged with transportation of a minor, in violation of 18 U.S.C. § 2423(a) (Count 1) and travel with the intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b) (Count 2). On July 30, 2014, Parkins pleaded guilty to Count 1 of the Indictment pursuant to a written plea agreement. In exchange for his plea, the government agreed to recommend to the court that (1) Parkins be granted a three level reduction in the offense level for acceptance of responsibility; (2) he be sentenced to the mandatory minimum sentence of ten years; (3) his April 17, 2013 arrest and conviction be considered relevant conduct; (4) the sentence imposed in this matter be ordered to run concurrently, including retroactively, with the sentence he was serving in New York; and (5) that he receive credit on the instant offense for time served since April 17, 2013. The court accepted these recommendations at sentencing and sentenced Parkins to a term of imprisonment for a period of 101 months, supervised release for ten years, a $1,000 fine and a special assessment of $100. Parkins did not take a direct appeal. On October 15, 2015, Parkins filed the instant motion to vacate, set aside or correct sentence, claiming ineffective assistance of counsel in violation of his Sixth Amendment rights.

## II. Legal Standard

A claim for ineffective assistance of counsel is examined under the *Strickland* test. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). Under this test, the movant must first show that "counsel's performance fell below an objective standard of reasonableness." *Id.* Second, the movant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Id.* at 694.

Under the first prong, a court, considering the totality of the circumstances, must determine whether counsel's acts or omissions were reasonable "under prevailing professional norms." *Id.* at 688. In order to show that the representation fell below reasonable norms, the movant must prove that counsel's alleged error was "inadequate" in comparison to "the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. The court must accord substantial deference to counsel's decisions, however, as counsel has "constitutionally protected independence . . . and wide latitude . . . in making tactical decisions." *Id.* at 689. To the extent that a decision is supported by "reasonable professional judgment," it does not constitute ineffective assistance of counsel. *Burger v. Kemp*, 483 U.S. 776, 794 (1987).

Under the second prong of the *Strickland* test, the movant must show that counsel's unreasonable errors "actually had an adverse effect on the defense" such

that there exists a "reasonable probability" that the outcome would have been different had counsel not erred. *Strickland*, 466 U.S. at 693-94. In cases involving a guilty plea, the movant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1995).

In applying *Strickland* and *Hill*, the Third Circuit has held that "there can be no Sixth Amendment deprivation of ineffective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). During plea negotiations, counsel is expected to give a defendant enough information to make a "reasonably informed decision whether to accept a plea offer." *United States v. Dung Bui*, 795 F.3d 363, 367 (3d Cir. 2015).

### III. <u>Discussion</u>

Parkins pleaded guilty to violating 18 U.S.C. § 2423(a), transportation of minors for a sexual purpose. Under § 2423(a), a person commits an offense when (1) he knowingly transports an individual in interstate or foreign commerce; (2) he does so with the intent to engage in sexual activity; and (3) the transported individual has not attained the age of 18. Parkins concedes that the government easily satisfies the first and third elements of the crime. However, he argues that his intent to engage in sexual activity with D.T. did not coincide with his interstate travel but instead arose spontaneously after arriving back at his apartment in New

4

York. Relevant to the motion *sub judice*, Parkins argues that his first counsel, Barbara Zemlock,[1] was ineffective in that she failed to obtain an expert to opine on his intent, or lack thereof, to engage in sexual activity with D.T. at the time he transported her from Pennsylvania to New York.

In support of his claim, Parkins produced an expert report from Dr. Elizabeth Farnum, M.D., which opines that Parkins did not travel in interstate commerce with the intent to engage the minor in sexual activity. Parkins argues that Ms. Zemlock's failure to obtain a similar psychiatric report stating that he lacked the requisite *mens rea* amounted to ineffective assistance of counsel.

Dr. Farnum's report was based on her examination of social media and text messages exchanged between Parkins and D.T leading up to their interstate travel. In the report, Dr. Farnum refers to chats initiated by D.T. wherein she complained about how she was treated in school and at home, threatened to harm herself, and demanded that Parkins take her away or she would run away on her own. In her report, Dr. Farnum states that Parkins has a strong desire to help and please others and is unable to say no to someone in need of help. She opines that his primary purpose in transporting D.T. from Pennsylvania to New York was to

---

[1] Prior to sentencing, Ms. Zemlock was replaced by Jonathan Crisp who represented Parkins at his sentencing. Both attorneys were privately retained. Although Parkins initially asserted ineffectiveness claims against both Ms. Zemlock and Mr. Crisp, it appears from his closing argument that Mr. Parkins is no longer pursuing a claim against Mr. Crisp as his brief provides no arguments in this regard, and therefore the court considers the claim waived. *See Nat'l R.R. Passenger Corp. v. Pa. Public Utility Com'n*, 342 F.3d 242, 259 n.14 (3d Cir. 2003) (stating that failure to adequately brief an issue waives that claim).

help her because he believed her to be in an abusive situation and at risk of self-harm, and felt compelled to respond to her pleas for rescue. She notes that Parkins was especially vulnerable to cries for help from someone he believed to be suffering from sexual abuse as he himself was sexually abused early in life by a family member.

Ms. Zemlock was a former public defender, former chief deputy public defender, and has been in the active practice of law for twenty-six years. At the hearing, she testified that, had the case gone to trial, she would have been able to present to the jury the chats D.T. sent about cutting herself and being unhappy without the need for an expert's testimony. She likewise would have been able to present evidence about Parkins suffering sexual abuse as a child. However, when questioned by defense counsel about her purported failure to hire an expert to opine as to Parkins' intent or state of mind at the time he transported D.T. to New York, Ms. Zemlock responded that an expert cannot opine on the element of intent and therefore any such report on the issue would not have been admissible at trial. (N.T. 17:14-19); *see also* Fed. R. E. 704(b). Ms. Zemlock further testified that she was concerned with the very graphic sexual content of the messages sent by Parkins to D.T. She stated that she presented to Parkins both the good and bad messages along with other facts inherent in the case, and ultimately it was Parkins who decided to plead guilty. (N.T. 18-24.)

After a thorough review of the evidence in this case, it is clear that Dr. Farnum focused only on a few messages exchanged between Parkins and D.T. and ignored those that were sexually charged. The chat messages ran from April 13, 2013 thru April 15, 2013, and included a total of 5,027 messages, many of which were "very graphically sexual." (N.T. 76:4-5.) From day one, Parkins told D.T. that she "looked cute" and was "beautiful," and that he "loves her." As the days went on, there were instances of nude exposure, online sex, and promises as to the type of sexual activity Parkins would perform if and when they got together. (*See, e.g.*, N.T. 76:2-3, 4-5; 77:5-16; 78:25; 81:6-22; 82: 9-10, 18-23; 85:5-8, 9-11; 87:15-18, 22-25; 88:8-11, 14-15, 18-20.)

The long line of sexually explicit messages shows that Parkins intended to engage in sexual activity with D.T. when he transported her from Pennsylvania to New York. Any assertion to the contrary is belied by the nature of the online chats Parkins exchanged with 12-year-old D.T. and by the fact that, immediately upon arriving in New York, he had sexual intercourse with her at least twice, exactly as he had promised.

Ms. Zemlock provided excellent representation in this case. It was not necessary for her to obtain an expert to opine on Parkins' intent. The messages not only speak for themselves but any testimony directly concerning his intent would have been inadmissible at trial. *See United States v. Bennett*, 161 F.3d 171, 182 (3d

7

Cir. 1998) ("Rule 704 prohibits testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite *mens rea*."). Failure to raise a meritless argument does not amount to ineffective assistance. *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

It should also be emphasized that Ms. Zemlock's ability to obtain for Parkins a sentence below the mandatory minimum was a clear benefit to Parkins.

### IV. Conclusion

Parkins has failed to show that counsel's representation fell below an objective standard of reasonableness. Accordingly, the motion filed pursuant to 28 U.S.C. § 2255 will be denied.

      s/Sylvia H. Rambo
      SYLVIA H. RAMBO
      United States District Judge

Dated: May 8, 2017